SLIP OPINION

Cite as 2015 Ark. 238

# SUPREME COURT OF ARKANSAS

No. CV–14–648

| | |
|---|---|
| RICHARD G. GAWENIS<br>APPELLANT | **Opinion Delivered** May 28, 2015 |
| V. | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV–2012–150] |
| ARKANSAS OIL & GAS COMMISSION, AND SEECO, INC.<br>APPELLEES | HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED. |

**JIM HANNAH, Chief Justice**

Appellant Richard G. Gawenis appeals from an order of the Van Buren County Circuit Court affirming an order of appellee Arkansas Oil and Gas Commission to integrate Gawenis's unleased mineral interests into a drilling unit. For reversal, Gawenis contends that the Commission's forced integration of his mineral interests is an unconstitutional taking of his property and that the Commission's order deprived him of his constitutional right to a jury trial to determine just compensation for his property. This appeal requires interpretation of the Arkansas Constitution; therefore, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(1) (2014). We affirm the circuit court's order.

Gawenis is the owner of the oil, gas, and other minerals beneath a .69 acre tract in Van Buren County, Arkansas, that is situated within the Ozark Highlands Unit ("OHU"). Formed by the United States of America Bureau of Land Management, the OHU is believed to be prospective for natural-gas exploration and development from the Fayetteville Shale

SLIP OPINION

formation. The OHU is composed mostly of mineral interests owned by the United States of America, but it also contains some privately owned mineral interests, such as the .69 acre mineral tract owned by Gawenis.

On May 22, 2012, the Commission held a public hearing to receive evidence related to SEECO's application seeking to create a 5,154-acre oil-and-gas drilling unit in the OHU and to integrate all unleased and uncommitted mineral interests within the unit. On June 4, 2012, the Commission established the unit and integrated all of the unleased and uncommitted mineral interests within the unit, except for the unleased mineral interests of Gawenis.

On June 26, 2012, the Commission held a hearing to receive evidence related to SEECO's request to integrate Gawenis's unleased mineral interests into the drilling unit. Gawenis testified at the hearing, stating that he believed that the forced-integration procedures of the Commission amounted to a taking of his property, that the risk-factor percentage was inappropriate, that his rights and his land belonged to him, and that he had not been afforded a jury trial to determine just compensation for his mineral interests. In a July 12, 2012 order, the Commission approved SEECO's application and integrated Gawenis's unleased mineral interests into the drilling unit.

Gawenis sought review of the Commission's decision in the circuit court pursuant to the Arkansas Administrative Procedure Act, Arkansas Code Annotated sections 25-15-201 to -219. At a hearing before the circuit court, Gawenis argued that the Commission's forced-integration procedures amounted to a taking of his property and that he was

entitled to have a jury determine compensation. On March 31, 2014, the circuit court entered an order affirming the Commission's decision and finding, inter alia, that the forced-integration procedures are constitutional and that the terms provided under the Commission's order were fair and reasonable consideration for an oil-and-gas lease. Gawenis appeals.

A brief review of the history of relevant oil-and-gas law is helpful to an understanding of Gawenis's arguments. In early twentieth-century Arkansas, the "rule of capture" governed the production and use of oil and gas. This court defined the rule of capture in a 1912 case as follows:

> Petroleum, gas, and oil are substances of a peculiar character. . . .They belong to the owner of land, and are part of it so long as they are part of it or in it or subject to his control; but when they escape and go into other land or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas extending under his neighbor's field, so that it comes into his well, it becomes his property.

*Osborne v. Ark. Terr. Oil & Gas Co.*, 103 Ark. 175, 180, 146 S.W. 122, 124 (1912) (quoting *Brown v. Spilman*, 155 U.S. 665, 669–70 (1895)). Under the rule of capture, a landowner had an unrestricted right to drill for oil and gas on his or her land, and if oil and gas were found, the landowner would not be liable to adjacent landowners whose lands were also drained. Each landowner was encouraged to produce as much oil and gas from the reservoir as possible, even though "[t]he resultant 'race' to the depletion of the reservoir wasted oil and gas reserves, as well as economic resources, and jeopardized property rights." Phillip E. Norvell, *Prelude to the Future of Shale Gas Development: Well Spacing and Integrating for the Fayetteville Shale in Arkansas*, 49 Washburn L.J. 457, 459

(Winter 2010).

In 1939, the General Assembly enacted the Arkansas Conservation Act. *See* Act of Feb. 20, 1939, No. 105, 1939 Ark. Acts 219.[1] The Act modified the rule of capture and established the Arkansas Oil and Gas Commission to regulate the development and production of oil and gas in the state.[2]

To prevent waste and to avoid the risks arising from the drilling of an excessive number of wells, the Commission has statutory authority to establish drilling units, designate the number of wells that may be drilled and produced, and regulate the spacing among wells within a unit. *See* Ark. Code Ann. § 15-72-302(b). The Commission also has the authority

---

[1]The Act has been amended from time to time and is now codified at Arkansas Code Annotated sections 15-72-101 to -407 (Repl. 2009).

[2]In a section titled "Declaration of Policy," the Act stated,

> In recognition of past, present, and imminent evils occurring in the production and use of oil and gas, as a result of waste in the production and use thereof in the absence of co-equal or correlative rights of owners of crude oil or natural gas in a common source of supply to produce and use the same, this law is enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production.

*See* Act of Feb. 20, 1939, No. 105, § 1, 1939 Ark. Acts 219, 219; currently codified at Ark. Code Ann. § 15-72-101; *see also* Susan Webber Wright, *The Arkansas Law of Oil and Gas*, 9 U. Ark. Little Rock L.J. 223, 231 (1986–87) (noting that "[i]f the rule [of capture] were allowed to operate without governmental regulations, each landowner could drill as many oil or gas wells as he could afford and could produce as rapidly as possible in order to drain the common pool before the others did so").

to integrate production in drilling units. *See id.* § 15-72-303. Owners[3] of tracts or interests within an established drilling unit may voluntarily pool, combine, and integrate their tracts or interests for the development or operation of that drilling unit. *See id.* § 15-72-303(a). But if the owners fail or refuse voluntarily to integrate their interests, the Commission shall, upon the application of any owner or operator,[4] integrate all tracts and interests in the drilling unit for the development or operation of the drilling unit and the sharing of production from the drilling unit. *Id.* § 15-72-303(b). "Forced integration" or "compulsory pooling," as it is known in other jurisdictions, "is the remedy that permits development of the drilling unit in the event that the mineral-interest owners cannot agree to pool voluntarily." Norvell, *supra*, at 463.

Integration orders are made after notice and a hearing and "upon terms and conditions which are just and reasonable and which will afford the owner of each tract or interest in the drilling unit the opportunity to recover or receive his or her just and equitable share of the oil and gas in the pool without unnecessary expense." Ark. Code Ann. § 15-72-304(a). When, as in this case, there is no well drilled in the unit, the integration order (1) authorizes the drilling, equipping, and operation of a well on the drilling unit, (2) provides who shall

---

[3]"Owner," as used in the Act, "means the person who has the right to drill into and to produce from any pool and to appropriate the production either for himself or herself, or for himself or herself and another, or others." Ark. Code Ann. § 15-72-102(9).

[4]An "operator" is a "person who has the right as an owner or by agreement with an owner to enter upon the lands of another for the purposes of exploring, drilling, and developing for the production of brine, oil, gas, and all other petroleum hydrocarbons." Ark. Code Ann. § 15-72-102(8).

drill, complete, and operate the well, (3) prescribes the time and manner in which all owners in the drilling unit who may desire to pay their share of the costs of such operations and participate therein may elect to do so, and (4) provides that an owner who does not affirmatively elect to participate in the risk and cost of the operations shall transfer his or her rights in the drilling unit and the production from the unit well to the participants for reasonable consideration and on reasonable terms. *See id.* § 15–72–304(b)(1)–(4).

The integration order at issue in this case gave Gawenis four options: (1) lease his mineral interests to any party on mutually agreed terms, (2) lease his interest to the participating owners for a cash bonus of $938.36 per net mineral acre and a 1/5 royalty, (3) participate as a working interest owner in the drilling of the proposed well by paying his proportionate share of the costs and receiving his proportionate share of the proceeds, or (4) become a "Non–Drilling (Non–Consenting) Party" who receives compensation for produced minerals after the participants have been paid a certain amount as a risk-factor percentage. If Gawenis failed to elect one of the options, then his mineral interests would be deemed integrated into the unit for a cash bonus of $938.36 per net mineral acre and a 1/5 royalty.

Gawenis contends that the forced-integration provisions of sections 15-72-303 through –304 authorize an unconstitutional taking of his property in violation of article 2, section 22, of the Arkansas Constitution. Arkansas statutes are presumed constitutional, and the party attacking a statute has the burden of showing that the challenged statute clearly violates the Arkansas Constitution. *E.g.*, *Hall v. Tucker*, 336 Ark. 112, 117–18, 983 S.W.2d 432, 435 (1999). Article 2, section 22 states that "[t]he right of property is before and higher than any

constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." Gawenis contends that, because forced integration under sections 15-72-303 and 15-72-304 is, for all intents and purposes, a taking of the mineral owner's property, it is not enough that the Commission determines "reasonable" compensation for the owner's mineral rights, *see* Ark. Code Ann. § 15-72-304(b)(4). According to Gawenis, he and other owners subject to forced integration are constitutionally guaranteed "just" compensation.

Although the issue whether the forced-integration procedures amount to an unconstitutional taking is one of first impression in Arkansas, we note that the Oklahoma Supreme Court confronted a similar issue in *Anderson v. Corporation Commission*, 327 P.2d 699 (Okla. 1957). In that case, the appellant asserted that Oklahoma's conservation statute made him a tenant-in-common owner of the unit well, which was not located on his land. He also asserted that the Oklahoma commission's order, which required him to either participate in the cost of the unit well or accept a bonus and a royalty, constituted an unconstitutional taking of his property. The court rejected the appellant's arguments:

> In the case of *Amis v. Bryan Pet. Corp.*, 185 Okl. 206, 90 P.2d 936, 939, an almost identical relationship existed by reason of municipal zoning ordinances controlling drilling. It was there said that,
>
> > 'Here the city created the relationship as it now exists between the parties. Had it not been for the zoning ordinance none of the lot owners would have held an interest in the oil and gas rights beneath the lots of the others. The relationship in the nature of a tenancy in common resulted merely as an incident to the application of the city's police powers. The tenancy . . . is entirely subject thereto. The parties cannot successfully assert their common law rights as tenants in common, for such a tenancy actually does not exist.'

SLIP OPINION

. . . .

> The order complained of did not constitute a taking of property of Anderson in any manner. It granted him the right to participate in the production from a well on Ellison's property, but on condition that certain requirements were met. The limitation of one well to eighty acres was a proper exercise of the police power in furtherance of conservation of natural resources. That he was allowed to share in the production or to receive a bonus instead of that participation was a grant to him at the expense of Ellison merely because of the recognition of correlative rights. On the other hand, Ellison was not deprived of anything because he was granted the right to drill the only well which would be permitted on the eighty acre drilling unit upon condition that Anderson (and other owners of leasehold interests) could participate in the production upon payment of his part of the cost. Both were forced to co-operate for the benefit of both and for the protection of the public generally.

*Anderson*, 327 P.2d at 702–03.

We find persuasive the reasoning in *Anderson*. Similar to the conservation statute discussed in *Anderson*, the forced-integration provisions of the Arkansas Conservation Act do not "take" anything away from Gawenis. Rather, the integration order allowed Gawenis to lease his interest in the drilling unit in exchange for compensation or to participate in the drilling of the well and receive monetary benefits.

We are not persuaded by Gawenis's argument that *Anderson* is inapposite because the Oklahoma Constitution differs from the Arkansas Constitution in its treatment of property rights. Even assuming, as Gawenis contends, that the Oklahoma Constitution is "more lax [than the Arkansas Constitution] in the limitations placed upon takings," this court has recognized that, although article 2, section 22 protects individual property rights, the individual's use and enjoyment of property is always subject to reasonable regulations in order to preserve the welfare of the public at large. *Yarbrough v. Ark. State Highway Comm'n*, 260 Ark. 161, 165, 539 S.W.2d 419, 421 (1976). We have also recognized that the valid exercise

of the police power through land-use regulations does not constitute a compensable "taking" because "the owner of such property is sufficiently compensated by sharing in the general benefits resulting" from the regulations. *See City of Little Rock v. Sun Bldg. & Developing Co.*, 199 Ark. 333, 338, 134 S.W.2d 582, 585 (1939). We hold that the Commission's integration of Gawenis's .69 acre mineral interest is not a compensable taking but a constitutional exercise of the State's police power.

Finally, we disagree with Gawenis's contention that the Commission's order deprived him of his constitutional right to a jury trial to determine just compensation for his property. Article 12, section 9, of the Arkansas Constitution states that

> [n]o property, nor right of way, shall be appropriated to the use of any corporation, until full compensation therefor shall be first made to the owner, in money; or first secured to him by a deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law.

Gawenis cites no authority for the proposition that the forced-integration provisions constitute a corporate "appropriation" of his property. Accordingly, he has no constitutional right to a jury trial on the issue of compensation.

In this case, Gawenis has failed to satisfy his burden of showing that the challenged statutes clearly violate the Arkansas Constitution. The circuit court's order is affirmed.

Affirmed.

Special Justices SARAH CAPP and DUSTIN JONES join in this opinion.

HART, J., dissents.

DANIELSON and BAKER, JJ., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** Richard G. Gawenis argues that he is entitled to a jury trial under the Arkansas Constitution. The majority, however, declines to address the issue. Because Gawenis is correct, I respectfully dissent.

The Arkansas Constitution provides as follows:

No property, nor right of way, shall be appropriated to the use of any corporation, until full compensation therefor shall be first made to the owner, in money; or first secured to him by a deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law.

Ark. Const. art. XII, § 9.

The Commission approved SEECO's application to integrate all unleased and uncommitted mineral interests. There is no jury trial at the Arkansas Oil & Gas Commission. Thus, if the integration process appropriates Gawenis's property, then the whole integration system is unconstitutional.

Though the majority does not address the issue, it concludes that the forced-integration provisions of the Arkansas Conservation Act do not take anything away from Gawenis because the integration order allowed Gawenis to lease his interest in the drilling unit in exchange for compensation or to participate in the drilling of the well and receive monetary benefits.

The integration order, however, does not account for secondary recovery methods that SEECO will utilize to cause the gas to migrate to SEECO's well. Minerals are fugacious when there is escape, seepage, or drainage that occurs as a result of the tapping a common reservoir; in the Fayetteville Shale, however, the gas is primarily nonfugacious, thus owing to the need

for secondary recovery methods. *See Young v. Ethyl Corp.*, 521 F.2d 771, 774 (8th Cir. 1975) (discussing fugacious and nonfugacious brine). In *Jameson v. Ethyl Corporation*, 271 Ark. 621, 609 S.W.2d 346 (1980), this court stated that the law should not "permit those persons who are in an economically advantaged posture to be able to gain negotiating clout by being allowed to undertake, with impunity, processes that go beyond extracting transient minerals or [gases] which have drained or flowed by natural process to their drilling sites." *Id.* at 626, 609 S.W.2d at 350. The *Jameson* court cited *Osborn v. Arkansas Territorial Oil & Gas Company*, 103 Ark. 175, 146 S.W. 122 (1912), where this court adopted the rule of capture, noting that petroleum, gas, and oil belong to the owner of the land and are part of it so long as they are part of it or in it or subject to his control, but when they escape and go into other land or come under another's control, the title of the former owner is gone. The *Jameson* court, however, noted that *Osborn* did not involve a secondary recovery process. The *Jameson* court recognized the obligation of the extracting party to compensate the owner for any special damages that may have been caused to the property. Similarly, Gawenis is entitled to compensation for any special damages that may be caused to his property by secondary recovery methods, such as fracking. *See O'Brien v. Primm*, 243 Ark. 186, 419 S.W.2d 323 (1967) (concluding that defendants were negligent in conducting the sand-fract operation and that such negligence was a proximate cause of damage to a water well); *Young*, 521 F.2d at 775 (concluding that a landowner had a vested existing property right in the brominated salt water underlying his land and that a party's act of forcibly removing the solution by means of injection and production wells constituted an actionable trespass). Thus, SEECO has

appropriated Gawenis's property, and Gawenis is entitled to a jury trial to determine his full compensation.

Thus, I respectfully dissent.

*Matt D. Campbell*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Jennifer L. Merritt*, Ass't Att'y Gen., for appellee.