[Cite as *Paczewski v. Antero Resources Corp.*, 2019-Ohio-2641.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

JEFFREY PACZEWSKI ET AL.,

Plaintiffs-Appellants,

v.

ANTERO RESOURCES CORPORATION ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MO 0016**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2018-151

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**

Affirmed.

---

*Atty. Craig Wilson,* C.J. Wilson Law LLC, 503 High Street, Suite 200, Columbus, Ohio 43215, for Plaintiffs-Appellants and

*Atty. Gregory Russel, Atty. Peter Lusenhop, and Atty Ilya Batikov*, Vorys, Sater, Seymour and Pease LLP, 52 East Gay Street , P.O Box 1008, Columbus, Ohio 43216.
*Atty. Ryan Regel,* Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793.
*Atty. Gerald Daily*, and *Atty. Scott Myers*, Asst. Attorney Generals, Environmental Enforcement Section, 2045 Morse Road, Building A-3, Columbus, Ohio 43229, for Defendants- Appellees.

Dated: June 19, 2019

_____

**D'APOLITO, J.**

**{¶1}** Appellants Jeffrey and Chanda Paczewski appeal the judgment entry of the Monroe County Court of Common Pleas granting the motions to dismiss filed by Appellees, Antero Resources Corporation ("Antero"), G-R Contracting, Inc. ("G-R"), and Richard Simmers, Chief of the Division of Oil and Gas Resources ("Division") in this action for termination of an oil and gas lease and damages. Appellants also appeal the trial court's denial of their subsequent Civ.R. 60(B) motion.

**{¶2}** Appellants concede that the unitization order issued by the Division pursuant to R.C. 1509.28 ("Order") is valid, but argue nonetheless that the Order constitutes a breach of the oil and gas lease at issue in this case, as well as an unconstitutional taking of the property and minerals subject to the lease without just compensation. For the following reasons, the judgment of the trial court is affirmed.

## UNITIZATION AND R.C. 1509.28

**{¶3}** Under the common-law rule of capture, a landowner always has an incentive to quickly drill his own well, regardless of the waste, because if he fails to capture the resources, his neighbor will drill his own well and licitly take the minerals for himself. With each new drill site the reservoir loses pressure, leaving much of the oil unobtainable. Conflicting hydraulic fracturing operations can likewise result in unnecessary drilling with less overall output. *Kerns v. Chesapeake Expl., L.L.C.*, -- Fed. Appx. --, 2019 WL 423140 (2019 6thCir.).

**{¶4}** "Unitization" refers to the consolidation of minerals or working interests covering all or part of a common source of supply. Kramer and Martin, THE LAW OF POOLING AND UNITIZATION, § 1.02 (LexisNexis Mathew Bender 2016). Unitization avoids disorderly and wasteful production practices by allowing the reservoir's characteristics, rather than man-made property lines, to govern development. Unitization minimizes surface disturbance and related environmental concerns. It also increases the

ultimate recovery of oil and gas for all of the unit's owners, who share in the resulting production on a just and equitable basis. Champion, *Forming the Unit Why Unitize? The Industry Perspective*, Rocky Mtn. Min. L. Inst. 5A-1 (2006).

**{¶5}** "Pooling" is the joining together of small tracts or portions of tracts for the purpose of having sufficient acreage to receive a well drilling permit under the relevant state or local spacing laws and regulations, and for the purpose of sharing production by interest owners in the pooled unit. Kramer and Martin at § 1.02. Under Ohio's statutory scheme, R.C. 1509.26 authorizes voluntary pooling agreements to form drilling units which conform to the minimum acreage and distance requirements.

**{¶6}** In the event that an owner is unable to secure a voluntary pooling agreement, R.C. § 1509.27 authorizes the Division to issue mandatory pooling orders where an owner is unable to secure a voluntary pooling agreement. Similarly, R.C. 1509.28 authorizes the Division to make orders providing for unit operations when reasonably necessary to increase the recovery of oil and gas.

**{¶7}** In enacting R.C. 1509.28, the General Assembly recognized that reaching voluntary agreement on a large-scale project often presents significant challenges, including self-serving opposition by minority interest owners. In a 1964 report to the General Assembly on the proposed conservation package, the Legislative Service Commission reasoned:

> Seldom will one owner control all of the land area which overlies a pool, and selfish interests may keep multiple owners from joining with each other for their mutual benefit and for conservation. In order to meet this situation a number of oil producing states have adopted unitization procedures similar to these which we recommend so that a minority cannot keep the majority from proper development and producing practices.

Ohio Legislative Service Commission, Report of Committee to Study Oil and Gas Laws in Ohio (Dec. 28, 1964).

## FACTS AND PROCEDURAL HISTORY

{¶8}    In 1975, Appellants' predecessors signed an oil and gas lease ("Lease"), which covers over 700 acres in Monroe County, Ohio.  The original contracting parties struck a single clause from the form lease.  The stricken clause, reads, in pertinent part:

The Lessor hereby grants to the Lessee the right to consolidate the leased premises, or any part thereof, with other lands to form an oil and gas development unit of not more than six hundred forty (640) acres for the purpose of drilling a well thereon, but the Lessee shall in no event be required to drill more than one well on such unit.

{¶9}    Appellants purchased 77 acres of the leased property in 2010.  G-R owns the working interest in the Lease, except for certain deep formations, which are owned by Antero.  Sixteen wells are producing from the Lease at present, including the well on the Appellants' property.

{¶10} Antero unsuccessfully attempted to negotiate a lease amendment with Appellants, which would have provided to Antero the right to include the Lease in a unit. As a consequence, on March 14, 2017, Antero applied to the Division for a statutory unitization order.  Antero sought to develop a 743-acre development unit contemplating three horizontal wells and including 61 acres of the Appellants' property ("Peters Unit").

{¶11} According to Antero's application, the Lease contains non-conforming provisions, which limit the amount of acreage that may be voluntarily consolidated by Antero into the Peters Unit.   Unless the Division formed the unit pursuant to its statutory authority, Antero explained that it would be required to reduce the lateral length of two of the three wells proposed for the unit's development, causing the physical waste of 18.4 billion cubic feet (13c1) of natural gas.

{¶12} Based on Antero's limited drilling budget and the availability of other development opportunities, Antero warranted that it would be unlikely to develop the Peters Unit without the requested unitization order.  As a result, neither Antero nor the other landowners in the unit, who signed oil and gas leases expecting development of

their properties, would share in production from the Peters Unit.  That result would harm the landowners' correlative rights and cause the waste of limited natural resources.

**{¶13}** The Division held an administrative hearing on the application where Appellants appeared and made objections.  On November 27, 2017, the Division issued the Order authorizing unit operations for the Peters Unit.  The Order recognizes that the Utica/Point Pleasant Formation uniformly underlies the unit area, and the allocated share of production to each tract is equal to that tract's unit participation.  (11/27/17 Order, p. 4, subsection 3).

**{¶14}** Appellants appealed the Order to the Ohio Oil and Gas Commission ("Commission") on December 19, 2017.  In the administrative appeal, Appellants assert that the Order is unlawful because it violates the Lease.  They seek vacation of the Order, and, further, that Antero's unitization application be denied, or, in the alternative, modified to allow Appellants be treated as unleased mineral owners under the terms of the Order.  The appeal to the Commission was pending as of the date of oral argument.

**{¶15}** Appellants filed their complaint in this case on April 16, 2018, alleging seven claims for relief – lease expiration based on lack of production and lack of production in paying quantities (counts one and two); breach of lease based on statutory unitization (count three); breach of implied covenant to undertake additional exploration (count four); conversion (count five); to quiet title (count six); and a violation of the takings clause in Article I, Sections 1, 16, and 19 the Ohio Constitution (count seven).   Appellants have abandoned all but counts three and seven in this appeal.

**{¶16}** Antero filed its motion to dismiss on June 18, 2018, and G-R joined in the motion.  The Division moved to dismiss the takings claim, the sole claim asserted against it, on June 15, 2018.

**{¶17}** In the judgment entry dated August 22, 2018, the trial court dismissed the case in its entirety.  Relevant to the current appeal, the trial court rejected Appellants' claim that Antero breached the Lease by applying for a statutory unitization order (count three).  The trial court recognized that an oil and gas unit can be formed in two distinct ways:  First, a lessee can voluntarily form a unit through the contractual authority granted by a lease's pooling and unitization clauses.  Second, the state can form a unit through its independent police power created by statute.  The trial court opined that the lease form

incorporated both mechanisms when it was originally drafted – the voluntary method through a specific provision, and the statutory method by way of the maxim that all contracts incorporate the law existing at the time of the contract's signing.

**{¶18}** Based on the original parties' deletion of the provision granting to the lessee the contractual authority to form the unit, the trial court concluded that the Lease was silent with respect to voluntary unitization. In other words, voluntary unitization was not foreclosed by the Lease, however, the lessee could not undertake it unilaterally, as the lessee could have if the provision had not been stricken from the Lease.

**{¶19}** The trial court further concluded that unitization by the state was not foreclosed based on the parties' deletion of the provision. Because R.C. 1509.28 was in force when the Lease was executed, the trial court reasoned that the statute was incorporated into the Lease by operation of law. The trial court cited *Weil v. State*, 46 Ohio St. 450, 21 N.E. 643, 644 (1889) for the proposition that " 'contracts must be expounded according to the law in force at the time they were made.' " *Id.* at 453, quoting *Smith v. Parsons*, 1 Ohio 236 (1923).

**{¶20}** The trial court also rejected Appellants' claim that the Order constituted a taking of the property and minerals covered by the Lease without just compensation (count seven). The trial court cited *Kerns v. Chesapeake Exploration, LLC*, N.D.Ohio No. 5:18 CV 389, 2018 WL 2952662 (June 13, 2018), aff'd __ Fed.Appx. __, 2019 WL 423140 (6th Cir. 2019), in which the Northern District of Ohio held that a statutory pooling order is a valid exercise of state police power, and that a property owner subject to such an order does not state a per se takings claim. *Id.* at *12.

**{¶21}** On August 30, 2018, Appellants moved for Civ.R(60)(B) relief regarding the breach of contract claim in count three, based on the Fifth District Court of Appeals decision in *Am. Energy-Utica, LLC v. Fuller*, 5th Dist. Guernsey No. 17 CA 000028, 2018-Ohio-3250, ¶ 35, appeal not allowed sub nom. *Am. Energy-Utica, L.L.C. v. Fuller*, 154 Ohio St.3d 1500, 2019-Ohio-345, 116 N.E.3d 154, ¶ 35 (2019). In that case, the parties to a 1981 lease struck out the voluntary unitization provision and included in its place a handwritten provision, which read, "UNITIZATION BY WRITTEN AGREEMENT ONLY!"

**{¶22}** Although the Fifth District conceded that unitization by way of R.C. 1509.28 was valid, the Court concluded nonetheless that statutory unitization without Fuller's

consent constituted a breach of the lease, as well as a retroactive impairment of the obligations set forth in the handwritten provision.  *Id.* at ¶ 40.

**{¶23}**  Antero filed an opposition brief to the 60(B) motion on September 11, 2018. The motion was summarily denied on September 18, 2018.  This timely appeal followed.

## STANDARD OF REVIEW

**{¶24}**  A motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992).  In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that the plaintiff can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in the plaintiff's favor. *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).  This Court independently reviews the complaint to determine if dismissal was appropriate. *Roberts v. Switzerland of Ohio Local School Dist.*, 2014-Ohio-78, 7 N.E.3d 526, ¶ 7 (7th Dist.).

**{¶25}**  The trial court must limit its consideration to the four corners of the complaint. *Hernandez*, supra ¶ 9. However, "[w]here documents are attached or incorporated into the complaint, the face of the complaint to be evaluated includes those documents."  *Adlaka v. Giannini*, 7th Dist. Mahoning No. 05 MA 105, 2006-Ohio-4611. "[M]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss."  *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, fn. 1, 673 N.E.2d 1281 (1997)(various articles and public health studies attached to the complaint were considered in Rule 12 motion); see also *State ex. rel. GMS Mgt. Co., Inc. v. Vivo*, 7th Dist. Mahoning No. 10 MA 1, 2010-Ohio-4184, ¶ 14 (written correspondence attached to the complaint considered for the purposes of motion to dismiss).

**{¶26}**  In order to prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are

Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *Ohio Receivables, LLC v. Millikin*, 7th Dist. Columbiana No. 17 CO 0038, 2018-Ohio-3734, ¶ 19, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Courts are not required to hold a hearing on a Civ.R. 60(B) motion unless the motion and accompanying materials contain operative facts to support relief under Civ.R. 60(B). *Id.* at ¶ 19, citing *Summers v. Lancia Nursing Homes, Inc.*, 2016-Ohio-7935, 76 N.E.3d 653, ¶ 40 (7th Dist.).

**{¶27}** The standard of review used to evaluate the trial court's decision to grant or deny a Civ.R. 60(B) motion is abuse of discretion. *Ohio Dept. of Job & Family Servs. v. State Line Plumbing & Heating, Inc.*, 7th Dist. Mahoning No. 15 MA 0067, 2016-Ohio-3421, ¶ 12. An abuse of discretion connotes conduct which is unreasonable, arbitrary, or unconscionable. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 107, 647 N.E.2d 799 (1995).

## ANALYSIS

**{¶28}** Appellants advance three assignments of error. The first two assignments of error challenge the trial court's decision with respect to count three, and are addressed together for the purpose of judicial economy:

### ASSIGNMENT OF ERROR NO. 1:

**THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE ANTERO RESOURCES CORPORATION'S MOTION TO DISMISS AS TO COUNT 3 (BREACH OF LEASE OF THE COMPLAINT).**

### ASSIGNMENT OF ERROR NO. 2:

**THE TRIAL COURT ERRED IN INTERPRETING THE LEASE TO INCORPORATE R.C. 1509.28 WHEN THE PARTIES INTENTIONALLY EXCLUDED UNITIZATION AND POOLING RIGHTS.**

**{¶29}** Appellants argue that we should adopt the analysis of the Fifth District in *Fuller* and conclude that the otherwise-valid Order constitutes a breach of the Lease. Appellants further argue that the clear intent of the parties in striking the voluntary unitization clause from the form lease was to foreclose unitization by any method.

**{¶30}** Appellees counter that the deletion of the lease provision renders the Lease silent with respect to unitization. Appellees further argue that the plain language of the stricken provision speaks solely to voluntary unitization, not statutory unitization, and that statutory unitization is incorporated into the Lease by operation of law. Finally, Appellees argue that an oil and gas lease that forecloses statutory unitization runs afoul of the plain language of and strong public policy undergirding Chapter 1509, which favors unitization for purposes of conservation, maximization of resource, and fairness.

**{¶31}** Oil and gas leases are governed by Ohio contract law. " 'The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.' " *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 483, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), quoting *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).

**{¶32}** The purpose of contract construction is to ascertain the intent of the parties which is presumed to reside in the language they chose to use in their agreement. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996). "If [the court is] able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9.

**{¶33}** Turning to the Fifth District's opinion in *Fuller*, we find that Appellants' reliance on the holding in that case is misplaced. The handwritten provision in *Fuller* – "UNITIZATION BY WRITTEN AGREEMENT ONLY!" – makes the lease in that case wholly distinct from the lease at issue here, and, as a consequence, we find the *Fuller* analysis is inapplicable.

**{¶34}** Instead, we adopt the sound reasoning of the Tenth and Eleventh Districts and find that the deletion of the clause at issue in this case rendered the Lease silent with respect to unitization. Ohio intermediate courts interpreting contracts with stricken clauses have concluded that the deletion does not prohibit the parties from engaging in the action that is the subject of the voided clause, but, instead, merely renders the lease silent as to that subject. See, e.g., *Karas v. State*, 10th Dist. 79AP-37, 1979 WL 209304, at *4 (September 11, 1979)(deletion of unitization clause meant that "[t]he lease * * * was silent on the question of unitization. The lease neither authorizes nor prohibits [the lessee] from entering a unitization agreement."); *Harris v. Harris*, 11th Dist. No. 97-L-076, 1998 WL 682358, at *2 (Sep. 25, 1998) (the note is silent on the issue of the rate of interest to be paid based on the deletion of the lease provision relating to the interest charge on overdue payments) (emphasis added). Courts outside of Ohio have reached the same conclusion regarding the deletion of a provision from a form lease. See e.g. *Hood v. S. Prod. Co.,* 206 La. 642, 654, 19 So.2d 336 (1944) (emphasis added) (deletion of pooling provision merely denied lessee the right to combine or pool premises but did not interfere with authority of state or federal government); *Sunray D-X Oil Co. v. Cole*, 461 P.2d 305 (Okla. 1967) (holding that lessee's application for a statutory pooling order did not breach the lease, despite striking of voluntary pooling clause).

**{¶35}** Having considered the arguments of all parties, we find that the deletion of the voluntary unitization clause in the Lease renders it silent on the issue of unitization in any form. Because the Lease is silent with respect to either type of unitization, we conclude that the Order does not constitute a breach of the Lease, and that Appellants' first and second assignment of error have no merit.

## ASSIGNMENT OF ERROR NO. 3:

**THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE SIMMERS' AND DEFENDANT-APPELLEE ANTERO'S MOTION TO DISMISS AS TO COUNT 7 OF THE COMPLAINT.**

**{¶36}** The Fifth Amendment states that private property shall not be "taken for public use, without just compensation," and is applicable to the states through the

Fourteenth Amendment. *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Appellants contend that the Order gives Antero the right to "take [Appellants'] oil and gas property rights from the [property]." They further argue that "[the Division's] actions in issuing the Order is a per se taking for which just compensation is owed." (Appellants' Brf. at 14).

**{¶37}** A taking requires a property interest. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010) ("Generally speaking, state law defines property interests[.]"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (noting that property interests stem from sources independent from the Constitution, such as state law). In Ohio, "minerals underlying the surface, including oil and gas, are part of the realty," though a landowner may sever the mineral estate through a conveyance. *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 45 N.E.3d 185, 189-90 (2015).

**{¶38}** Ohio also recognizes "correlative rights," defined as "the reasonable opportunity to every person entitled thereto to recover and receive the oil and gas in and under the person's tract or tracts, or the equivalent thereof, without having to drill unnecessary wells or incur other unnecessary expense." Ohio Rev. Code § 1509.01(I). Earlier this year, in *Kerns*, supra, the Sixth Circuit observed that "each landowner has both a property interest in the subsurface minerals of his lot and an attendant right to recover those minerals without needless waste – as does his neighbor." Id. at *5.

**{¶39}** Nonetheless, the Ohio Supreme Court has long recognized that private property is subject to the state's police power. *State v. Anderson*, 57 Ohio St.3d 168, 169, 566 N.E.2d 1224 (1991) ("It is well-established that private property is held subject to the general police power of a state and may be regulated pursuant to that power."); *State ex rel. Taylor v. Whitehead*, 70 Ohio St.2d 37, 40, 434 N.E.2d 732 (1982) ("Laws enacted in the proper exercise of the police power * * * even though they result in the impairment of the full use of property by the owner thereof, do not constitute a taking of private property.") (internal citations omitted).

**{¶40}** Of equal import, Ohio law does not afford subsurface property interests the same protections as surface interests. *Baatz v. Columbia Gas Transmission, LLC*, 295 F. Supp. 776, 785 (N.D. Ohio 2018). Rather, under Ohio law, subsurface trespasses are

not actionable unless the invaded landowner can prove actual damage to the property or actual interference with the actual or foreseeable use of the land." *Id.*, see also *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 1996-Ohio-352, 670 N.E.2d 985 (1996) (extending the reasoning that absolute ownership of air rights "has no place in the modern world" to subsurface rights).

**{¶41}** Further, the United States Supreme Court had consistently held "that a state may adopt reasonable regulations to prevent economic and physical waste of natural gas." *Cities Serv. Gas Co. v. Peerless Oil & Gas Co.,* 340 U.S. 179, 185, 71 S.Ct. 215, 95 L.Ed. 190 (1950) (further stating that the due process claim against the state regulation was "virtually without substance."). In *Peerless Oil*, the U.S. Supreme Court recognized that the Supreme Court had previously upheld various kinds of state legislation designed to curb waste of natural resources, protect the correlative rights of owners through ratable taking, and to protect the economy of the state. *Id.* (internal citations omitted); see also *Hunter Co. v. McHugh*, 320 U.S. 222, 227-28, 64 S.Ct. 19, 88 L.Ed. 5 (1943) ("We have held that a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment."); *Ohio Oil Co. v. Indiana*, 177 U.S. 190, 212, 20 S.Ct. 576, 44 L.Ed. 729 (1900) ("[W]e cannot say that the statute [regulating natural deposits of oil and gas] amounts to a taking of private property, when it is but a regulation by the state of Indiana of a subject which especially comes within its lawful authority.").

**{¶42}** The Ohio Supreme Court has held that the state's pooling procedures constitute a proper exercise of its police power. See *Redman v. Ohio Dep't of Indus. Relations*, 75 Ohio St.3d 399, 662 N.E.2d 352, 361 (1996); *Burtner-Morgan-Stephens Co. v. Wilson*, 63 Ohio St.3d 257, 586 N.E.2d 1062, 1064-65 (1992). By requiring a just, orderly, and efficient process for neighbors to extract common resources, Ohio courts have concluded that the state's power to mandate unitization is exercised for the purpose of protecting property rights.

**{¶43}** Courts in other states that have addressed constitutional challenges to statutory pooling requirements have concluded that they do not constitute a taking of a

landowner's minerals without just compensation.  For instance, the Supreme Court of Oklahoma held:

> [T]he lawful exercise of the state's power to protect the correlative rights of owners in a common source of supply of oil and gas is not a proper subject for the invocation of the provisions of either the State or Federal Constitution which prohibit the taking of property without just compensation or without due process of law and forbid the impairment of contract obligations. As we view it, the property here involved has not been taken or confiscated: its use has merely been restricted and qualified.

*Patterson v. Stanolind Oil & Gas Co.*, 182 Okla. 155, 77 P.2d 83, 89 (1938). Other states have reached similar conclusions.  See, e.g., *Gawenis v. Ark. Oil & Gas Comm'n*, 2015 Ark. 238, 464 S.W.3d 453, 457-58 (2015) (state procedure did not "take" anything away from the landowner, but rather, allowed him "to lease his interest in the drilling unit in exchange for compensation or to participate in the drilling of the well and receive monetary benefits"); *Sylvania Corp. v. Kilborne*, 28 N.Y.2d 427, 322 N.Y.S.2d 678, 271 N.E.2d 524, 527 (1971) (same).

**{¶44}**  In the interest of protecting correlative rights, R.C. 1509.28 authorizes the chief of the Division to issue an order pooling the properties of owners if the chief finds that a pool is necessary to "increase substantially the ultimate recovery of oil and gas." R.C. 1509.28. The order must contain several provisions, including provisions as to expense sharing, supervision of the unit operations, and provisions as needed "for the protection or adjustment of correlative rights." *Id.*  Landowners receive royalties for the oil and gas retrieved through the subsequent drilling, which must also be set forth in the order.  An order shall not be construed "to result in a transfer of all or any part of the title of any person to the oil and gas rights in any tract in the unit area.  All property * * * shall be the property of such owners in the proportion that the expenses of unit operations are charged." R.C. 1509.28.

**{¶45}** Based on the foregoing collection of cases, as well as the statutory framework of R.C. 1509.28, we find that statutory unitization leaves each landowner's property interest in the minerals intact, and that the exercise of the state's power

constitutes regulation of mineral interests, rather than a taking without just compensation. Accordingly, we find that Appellants' third assignment of error has no merit.

## CONCLUSION

**{¶46}** For the foregoing reasons, we find that the Lease is silent with respect to unitization, and, as a consequence, the Order does not constitute a breach of contract. We further find that the Order does not result in an unconstitutional taking of property without just compensation. Accordingly, the judgment entry of the trial court is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**