[Cite as *Manshadi v. Bleggi*, 2024-Ohio-5191.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

JAVAD D. MANSHADI, M.D. ET AL.,

Plaintiffs-Appellants,

v.

ALBERT BLEGGI, M.D. ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0025**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CV 00320

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Stephen P. Hanudel,* for Plaintiffs-Appellants and

*Atty. Richard G. Zellers*, for Defendants-Appellees.

Dated: October 28, 2024

**DICKEY, J.**

**{¶1}** Appellants, Javad D. Manshadi, M.D. and Galexco, LLC, appeal from the January 23, 2024 judgment of the Mahoning County Court of Common Pleas denying their Civ.R. 60(B) motion for relief from judgment. On appeal, Appellants assert the trial court erred in denying their motion and claim they are entitled to relief under Civ.R. 60(B)(3) and (5). Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** The following facts and procedural history are derived from the record as set forth in *Manshadi v. Bleggi*, 2019-Ohio-1228 (7th Dist.) ("*Manshadi I*") and *Manshadi v. Bleggi*, 2021-Ohio-3593 (7th Dist.) ("*Manshadi II*").

On or about September 15, 1997, Appellee, Albert Bleggi ("Bleggi"), a physician, formed Medical Imaging Network, Inc. ("MIN"). Bleggi was the sole shareholder of MIN and MIN is also an Appellee. Appellees owned radiology equipment and operated a radiology practice. On June 20, 2005, MIN filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Ohio. On August 17, 2005, Bleggi filed for bankruptcy protection in the same jurisdiction. On January 30, 2006, Lyon Financial Services, Inc. ("Lyon"), a secured creditor in Bleggi's bankruptcy, filed a complaint in the bankruptcy court objecting to Bleggi's request for a discharge of his debts in his Chapter 7 bankruptcy.

On May 4, 2007, the parties in MIN's bankruptcy filed a joint Chapter 11 plan of liquidation. In this plan, Lyon, Bleggi and MIN agreed that Bleggi would form a new entity to which Lyon would lend approximately $3.2 million dollars in exchange for a cognovit note guaranteed by Bleggi. On May 27, 2007, Bleggi formed Medical Imaging Diagnostics, LLC ("MID") as a single member limited liability company, with Bleggi as the sole member. After MIN's Chapter 11 plan was confirmed, Lyon and Bleggi reached an agreement to dismiss Lyon's complaint against Bleggi's bankruptcy filing,

because Lyon was to receive its relief through operation of the MIN Chapter 11 plan.

Sometime in early 2008, Bleggi and MID defaulted on the Lyon cognovit note. On April 2, 2008, Lyon sued Bleggi, Bleggi's wife, his realty company and MID in Mahoning County Common Pleas Court for default on the cognovit note. (Mahoning County Case No. 08CV1376). Lyon obtained judgment on the note on April 7, 2008.

On June 4, 2008, Lyon filed a motion asking that a receiver be appointed over MID. This receiver was appointed on June 16, 2008. On November 7, 2008, the trial court ordered the sale of all of MID's assets. In late 2008 or early 2009 Appellant Javad Manshadi ("Manshadi"), learned of the opportunity to purchase MID's assets through his father-in-law, George Alexander. Alexander was a long-time friend of Bleggi. On March 12, 2009, Manshadi formed Galexco, LLC, a single member limited liability company with Manshadi as the only member, for the sole purpose of purchasing MID's assets (Manshadi and Galexco are hereinafter referred to collectively as "Appellants"). On April 2, 2009, Galexco entered an appearance in the trial court as a potential buyer of MID's assets. On August 31, 2009, Galexco was approved for a Small Business Administration ("SBA") loan from Excel National Bank ("Excel") for $1.18 million in order to purchase MID's assets. Manshadi executed a personal guarantee on the loan.

On October 2, 2009, the court approved an agreed order for the sale of MID's assets to Galexco for $1.3 million. Galexco purchased all rights, title and interest in MID's assets, including tangibles and certain intangibles. This included radiology equipment, x-ray machines, MRI machines and CT scan machines which had been owned by MID. The terms provided that Galexco advance $75,000 to the receiver and then pay $1.225 million directly to Lyon. The $1.225 million to Lyon was to satisfy the judgment against Bleggi. On January 8, 2010, Galexco tendered payment according

to the terms of this agreement and the court approved the final distribution and closed the case.

The crux of this matter involves an alleged oral agreement between Appellants and Appellees. Manshadi contends that in early 2010, the parties agreed that Galexco would maintain ownership of the equipment, but that MID would be permitted to utilize this equipment to operate MID's Boardman and Liberty locations, where the equipment had remained ever since it was purchased by Appellees. Manshadi contends that in the oral agreement with Appellees, in exchange for use of the equipment, Appellees agreed to pay Appellants a one-time sum of $350,000. According to the terms of Manshadi's SBA loan with Excel, Galexco was required to maintain ownership of the equipment. Also according to the terms of the SBA loan, however, Galexco was required to operate the equipment and bill insurance providers under its own medical provider identification number and maintain insurance on the subject equipment. Manshadi alleges that the parties agreed that their arrangement allowing MID to operate was intended to last less than a year, because the parties were looking for a buyer of Appellees' practice and were hoping it would sell within that time. Further, Manshadi asserts that Appellees agreed to pay the monthly payment that Manshadi owed to Excel on the SBA loan, and in exchange Appellees would keep all other profits from the radiology practice. Manshadi admits that shortly after entering into the oral agreement, Bleggi informed him that he would not be able to secure the funds necessary to make the one-time lump sum payment. Hence, Appellees began making additional monthly payments of between $3,000 to $4,000 per month, commencing sometime in early 2010. These payments continued for approximately three years. MID continued to pay the monthly Excel SBA loan payment for approximately one year. The record contains no copies of cancelled checks or other evidence in support of the amount or duration of any of these payments.

The parties attempted to find a buyer for Appellees' practice and engaged in negotiations with St. Elizabeth's Hospital for a short time, but a sale of the practice was never achieved. On April 11, 2013, Excel notified Galexco that it was in default on the loan, because services utilizing the equipment were being provided under MID's provider number, rather than a provider number obtained by Galexco. Manshadi contends that he had been telling Bleggi that he needed his own provider number, but that Bleggi had dissuaded him, assuring him the practice would be sold in the intervening time period.

Since Galexco had not insured the equipment, on April 12, 2013, Appellees obtained two Travelers Insurance policies covering the Galexco equipment: the first was a commercial general liability policy and a business owner policy, naming Galexco as an additional insured. The second policy was only in MID's name but was to insure the equipment owned by Galexco.

Manshadi contends that he met with his attorney, who had been representing him throughout his dealings with Appellees, on May 16, 2013 to discuss the technical default issue and that Bleggi was present. We note that the record reflects this attorney was a long-time friend of Bleggi's. Bleggi contends he was not present for any such discussions regarding technical default on the loan. Manshadi alleges that his lawyer and Bleggi urged him to sign a document transferring 50% ownership of Galexco to Bleggi, as well as giving Bleggi the power to cast any tie-breaking vote in Galexco. Manshadi contends he was told by both that this would result in making Bleggi liable for one-half of the Excel loan and would solve the technical default issue. Manshadi claims his lawyer told him the lawyer had spoken with Excel and received approval for the transaction. On this basis, Manshadi contends he signed a document transferring ownership. No such document was ever produced and is not a part of the record. However, Manshadi claims he contacted Excel after the transfer of Galexco to confirm what had transpired. Excel indicated that it did not approve the transaction

and that any change in management of Galexco without prior approval would result in violation of the loan agreement.

Manshadi contends that a short time later, Bleggi stopped making monthly payments on both the outstanding $350,000 lump sum debt and on the monthly Excel loan payment. Manshadi also alleges that Bleggi assumed control of Galexco's financial documents and prevented Manshadi from having access to any of Galexco's records. Manshadi says he attempted to obtain the records by going to MIN's Boardman location but that Bleggi refused access and called the police to escort Manshadi off of the property. On June 18, 2013, Manshadi sent an email to his lawyer and to Bleggi stating that he was voiding the controlling interest agreement he had signed. There was no response to the email.

On July 8, 2013, Manshadi, in his individual capacity, filed an action against Bleggi, MID, and Galexco for refusal to allow Manshadi access to records and for conversion, fraud, and breach of contract. (Mahoning County Case No. 13CV1822).

On September 10, 2013, Excel sent Galexco, via Manshadi, a notice of default on the loan and a demand for full payment of the principal balance. The total amount due at the time was $838,357.65.

In this 2013 action, Manshadi filed for a temporary restraining order seeking to enjoin Appellees from dissipating, hiding, or compromising the assets of Galexco while the matter was pending. A hearing was held on the temporary restraining order on September 19, 2013. Several individuals testified, including both Bleggi and Manshadi. . . . During his testimony, Bleggi admitted that he had been paying the Excel loan monthly stating, "[t]he agreement with me and Galexco is to make sure the bank note gets paid for the equipment." (9/19/13 Tr., p. 190.) Regarding the lump sum payment from MID to Galexco, Bleggi testified, "$300,000 we agreed to pay him." (9/19/13 Tr., p. 200.) Bleggi testified that there was no written

Case No. 24 MA 0025

document for this agreement and "[h]e's been paid 165- so far, so he's owed another 135,000. And I've kept up my word. That's 300,000." (9/19/13 Tr., p. 201.) Bleggi also answered in the affirmative when asked if he was required to pay the Excel loan and whether it was delinquent at that time. (9/19/13 Tr., p. 201.)

While these matters were pending, due to below normal temperatures in January of 2014, water pipes froze and ruptured at MIN's Boardman location where some of Galexco's equipment was located. Shortly afterward, Appellees submitted a claim to Travelers, alleging the subject equipment suffered total damage and loss due to the flooding. Over the next several months, Travelers made several payments to Appellees pursuant to its policies of insurance, totaling over $1 million.

On July 23, 2014, Excel entered into a voluntary surrender and release (VSRA) Article 9 sale agreement with Appellees. The VSRA acknowledged that Appellants owned the equipment in which Excel had a security interest, that Appellants were in default, and that $875,000 remained due and owing on the loan. Despite this, Appellants were never made a party to the agreement. The VSRA also acknowledged that Appellees had obtained insurance on the subject equipment and that Travelers had issued two checks made payable to MID and Excel in the amounts of $610,216.32 and $34,619.60 for equipment damage or loss. The VSRA further indicated that MID was in possession and control of the secured assets and that MID intended to purchase the assets from Excel in a private sale pursuant to R.C. 1309.101. Finally, the VSRA had as an attachment an exhibit listing all of the Galexco equipment in which Excel had a secured interest, totaling $465,000. This exhibit does not separate or separately value undamaged equipment from the Liberty location from damaged equipment located in Boardman. It also does not include any equipment owned by MID or any specific valuations of this property. This exhibit also stated that MID was to retain the remaining $179,835.92 of the

insurance proceeds to cover the loss of equipment owned by MID which was damaged or destroyed when the pipes burst. The VSRA provided Excel's release to Appellees from further liability, but specifically stated that Excel was preserving its deficiency claims against Appellants. The VSRA was executed by Excel and Appellees.

Due to issues with substitution of counsel and the requirement of additional time to prepare for trial, on September 10, 2014 Manshadi filed a notice dismissing the 2013 lawsuit without prejudice pursuant to Civ.R. 41(A).

On January 29, 2016, Manshadi filed . . . suit, alleging similar claims of fraud, conversion, and breach of contract. This suit was filed by him, individually, and on behalf of Galexco. In this suit, Appellants requested a declaratory judgment that Manshadi be deemed the sole owner of Galexco and an order that the May 2013 transfer agreement be invalidated. On January 29, 2016, Appellants filed a motion for a restraining order in this action, again seeking to enjoin Appellees from disposing of any assets, including, money and property that allegedly belonging to Galexco. On March 3, 2016, Appellees filed a motion to dismiss and for sanctions. They alleged that the one-year saving statute, R.C. 2305.19, had run in this matter, barring Appellants from raising these claims. As Bleggi alleged that his counsel informed counsel for Manshadi that the savings statute no longer applied prior to refiling, sanctions were sought. Manshadi contended that because his breach of contract claim had a six or eight year statute of limitations, the savings statute did not apply and as the claims were refiled within this statute of limitations the case should not be dismissed. In a judgment entry dated July 7, 2016, the trial court denied the motion to dismiss.

On June 30, 2017, Appellants filed a motion for summary judgment seeking judgment for damages against all defendants jointly and severally in the amount of $457,000 and for the court to find that Bleggi had no

interest in Galexco because Galexco was wholly owned by Manshadi. Several exhibits were attached, including: (1) an affidavit from Manshadi setting forth evidence of his ownership in Galexco; (2) a copy of the VSRA between Appellees and Excel with the itemized list of the equipment subject to the VSRA; (3) a statement of loss issued by Travelers Insurance reflecting insurance payments made to MID and a schedule of the equipment subject to the insurance payments; (4) a spreadsheet listing of all the equipment that was owned by Appellees; (5) a notification of disposition of collateral sent to Appellants from Excel, showing that the subject equipment was scheduled to be sold at a private sale; (6) a secured party bill of sale from Excel to MID, reflecting that MID purchased all of Galexco's equipment for $465,000 pursuant to R.C. 1309.101; (7) a copy of the endorsed check from Travelers Insurance to MID and Excel in the amount of $610,216.32; (8) a copy of the personal guarantee executed by Manshadi for the Excel SBA loan in 2009; (9) a copy of the loan agreement executed by Manshadi, acting on behalf of Galexco, and Excel in 2009; (10) a copy of the note for the Galexco SBA loan; (11) a copy of the security agreement between Excel and Galexco with an attached schedule of the collateralized equipment; (12) a copy of the standby creditor's agreement listing Bleggi, individually, as the standby creditor and Galexco as the standby borrower; (13) a promissory note executed by Galexco to Bleggi, individually, for $155,000 for the first balloon payment on the subject equipment; (14) a statement of the Excel SBA loan showing payments made on the loan from September 2009 through December of 2014, including the lump sum payment from the private purchase by MID, and having an outstanding balance of $363,123.81; (15) articles of organization for Galexco filed with the Ohio Secretary of State in 2009; and (16) a copy of the agreed order approving the sale of the Galexco equipment from the receiver to Appellees.

On July 26, 2017, Appellees also filed a motion for summary judgment. In their motion they argued that they were entitled to judgment

for several reasons. First, they argued Counts 2 and 3 of the complaint, which raised claims for conversion and fraud in the transfer of Galexco's ownership, were moot. They argued that since there was never any transfer of Galexco stock, there was never a document produced to evidence that Manshadi signed over 50% ownership. They also argued that Manshadi's tax returns showed him as the sole owner of Galexco, retaining all of Galexco's profits and losses.

Next, Appellees claimed that Count 1, alleging the conversion of the medical equipment, was not supported by the facts as alleged by Manshadi. Appellees proceeded to outline multiple facts which allegedly showed that Bleggi never received any proceeds relative to Galexco equipment. Appellees claimed that neither Manshadi nor Galexco ever obtained insurance on the subject equipment as required by the Excel loan, so Appellants were in breach of their loan agreement from the beginning. Ultimately, Appellees obtained this insurance. Payments made by Travelers for the damaged Galexco equipment were negotiated between Travelers, counsel for MID and Excel. The burst water pipe damaged both Galexco and MID property: all of this property was covered by Travelers Insurance. Excel received payment from Travelers for the damaged Galexco equipment. The value for that equipment was determined by the insurance adjusters and Excel. Since the loan agreement provided that Excel had a security interest in all of the equipment, Appellants had no remaining interest in the equipment once Excel asserted its rights as a secured creditor. Based on these alleged facts, Appellees suggested in their motion for summary judgment that Appellants should seek recourse against Excel, rather than Appellees, claiming that Appellants were informed of the pending sale of the collateral by Excel, which sent Appellants a notice of disposition of collateral, and that Excel rightfully exercised their claim over the collateral pursuant to the VSRA agreement.

Regarding Count 4 of the complaint, alleging breach of contract, Appellees argued that any contract that existed between the parties was oral, and admittedly consisted of payments made by MID to Galexco on a monthly basis over several years as opposed to a one-time lump sum payment. Pursuant to R.C. 2305.07, an action on an oral contract must be brought within six years after the cause accrued. As the oral promise alleged by Manshadi began when payments were made in October or November of 2009 and their action was not filed until January 29, 2016, these claims are outside the statute of limitations.

Attached to Bleggi's motion was an affidavit stating that he did not remember signing any document transferring 50% ownership of Galexco and that he made several payments to Manshadi reflecting both profits from the business and for payment of the Excel loan. He averred that he never promised to pay $300,000 in a lump sum. He stated that he did not retain insurance proceeds from the subject equipment. A copy of the security agreement between Galexco and Excel was attached to the motion. Appellees also attached the statement of loss from Travelers Insurance and the notice of disposition of collateral from Excel to Appellants.

In a judgment entry dated January 23, 2018, the trial court overruled Appellants' motion and granted Appellees' summary judgment motion. The trial court reached the following conclusions based on the pleadings, documents filed and the transcript of the hearings held in the previous action. Regarding the dispute over ownership of Galexco, the alleged transaction transferring 50% ownership never took place, and all claims in this regard were moot.

Regarding the conversion of the medical equipment claims, the trial court found that Appellants were seeking $179,825.92 of the insurance proceeds, claiming Appellees improperly kept that amount when it should have gone to Excel as the secured creditor, in payment on the equipment. The trial court held that because Appellants never obtained insurance on

the equipment, they had no claim to any of the insurance proceeds. Moreover, Appellees bought and owned certain equipment insured with Travelers that was also damaged and Appellees were paid only for this equipment from the insurance proceeds. Regarding Galexco's equipment, the court found that it was appraised and its value adjusted, and Excel was paid for the value of this equipment as the secured creditor of the loan between Galexco and Excel because the loan was in default. Appellants were given notice that Excel was disposing of the remaining viable Galexco equipment by selling it to MID, and so given an opportunity to object or request a specific accounting, but did not. Hence, Galexco waived that right. As Appellants are not entitled to recover any of the insurance proceeds, they were unable to recover on their conversion claims.

Regarding breach of contract claims, Appellants failed to produce a written contract demonstrating the alleged 50% transfer of ownership of Galexco to Bleggi, and the record did not show that such transfer ever took place. As to the alleged agreement to pay Appellants either $350,000 or $300,000, the trial court also concluded that any contract for payment that is not to be performed within one year must be in writing pursuant to R.C. 1335.05. Appellants acknowledged in their motion for summary judgment that a lump sum payment was not made. Instead, payments were made by Appellees at the rate of $3,000 to $4,000 per month beginning in 2009 with the agreement of Appellants. The complaint in the action was filed January 29, 2016. Any promise to pay, according to Appellants' own motion for summary judgment, began in October or November of 2009. As there was no one-time payment but a series of installments that continued over several years, in the absence of a written contract Appellants were precluded from bringing this breach of contract claim by the statute of frauds.

*Manshadi I*, 2019-Ohio-1228, ¶ 3-27 (7th Dist.).

Case No. 24 MA 0025

Appellants appealed the 2018 order (*Manshadi I*). They argued the trial court erred in granting Appellees' motion for summary judgment on their claims of conversion and breach of contract. We determined that, although the Appellants brought a common law claim of conversion, all of the medical equipment at issue was used as collateral for Appellants' SBA loan and that Excel, as the holder of the loan, had taken a security interest in the equipment as a secured creditor. Thus, we held that any disposition of the collateralized equipment by Excel fell under the strict notice requirements for secured transactions pursuant to Section 9-611 of the Uniform Commercial Code (UCC), codified in Ohio as R.C. 1309.611. *Id.* at ¶ 38. Pursuant to R.C. 1309.611, Excel was required to "send a reasonable authenticated notification of disposition" to Appellants prior to the sale in order to give Appellants the opportunity to request an accounting of the collateral. We further held that the notification sent to Appellants by Excel listed the sale date for the collateral as "sometime after August 3, 2014" but that the sale of the collateral by Excel to Appellees, through an Article 9 voluntary surrender and release agreement ("VSRA"), was executed on July 23, 2014, rendering the notice invalid on its face. *Manshadi I,* ¶ 42. In addition to the invalid notice issue, we held the record was insufficient regarding key terms of the sale between Appellees and Excel. Specifically, (1) the record did not show that separate valuations were obtained and disclosed for the undamaged and damaged equipment; (2) the record contained no evidence of what Appellees paid for each of these separate groups of equipment; and (3) that the purchase by Appellees was made using the Travelers' insurance proceeds. Thus, we held:

Reasonable minds could differ, after review of this record, on the issue of whether insurance proceeds due and owing solely for damaged equipment was instead converted by Appellees and used towards the purchase of other, undamaged Galexco equipment. Reasonable minds could differ as to whether the disposition of the equipment by Excel through a purported Article 9 sale to Appellees, who admit they had agreed to pay

Appellants' loan with Excel and that the loan was allowed to default, amounted to a sale to a bona fide purchaser. Because these questions of fact exist there are outstanding matters for trial in this matter and summary judgment was not appropriate with regard to Appellants' conversion claim.

*Manshadi I,* ¶ 42.

As a result, we remanded the matter to the trial court, holding:

As genuine issues of material fact exist regarding the validity of the underlying Article 9 sale of all of the collateralized equipment, Appellants' first assignment of error has merit and is sustained.

[. . .]

Therefore, the judgment of the trial court is reversed only as it pertains to Count 1 of Appellants' complaint for conversion of the subject equipment. The remainder of the trial court's judgment is affirmed and the matter is remanded to the trial court for further proceedings according to law.

*Manshadi I,* ¶ 56-58.

On remand, before any proceedings were held in the trial court, Appellees filed a motion to dismiss on February 25, 2020, asserting:

The Court of Appeals specifically took issue with the notice requirements finding that they were not complied with. Upon a review of the relevant law, it is the Defendants' position that they are not responsible for providing the Plaintiffs with notice prior to the disposition of collateral, but rather, it is the secured parties' responsibility to properly notify the Plaintiffs. The secured party in this matter was Excel National Bank. They were the party who collected collateral from the Plaintiffs and Defendants to be disposed of due to a default in a loan agreement with them. It was Excel National Bank's responsibility to properly notify the Plaintiffs prior to the

disposition of collateral which the Court of Appeals found that they did not; thus, remanding the case for further proceedings with this Honorable Court. Defendants, however, are not responsible for notification and thus are no longer liable in this matter. Thus, they are requesting their dismissal from the suit as this matter is to be litigated solely between the Plaintiffs and Excel National Bank.

(2/25/20 Motion to Dismiss.)

On March 10, 2020, Appellants filed a response arguing that Appellees misinterpreted our opinion in *Manshadi I*. Specifically, Appellants argued that Appellees ignored a portion of our holding in that we not only held that Excel's notice was not reasonable and was invalid on its face, but, also, that a genuine issue of material fact existed as to whether Appellants were bona fide purchasers of the medical equipment at issue.

On June 5, 2020, the trial court issued a short judgment entry, stating:

Upon review and consideration of the matter, and for good cause shown, Defendants [sic] Motion to Dismiss is sustained. Claims remaining in Plaintiffs [sic] Complaint against Defendants are dismissed with prejudice. Costs taxed to Plaintiffs.

(6/5/20 J.E.)

*Manshadi II*, 2021-Ohio-3593, ¶ 3-7 (7th Dist.).

**{¶3}** Appellants filed their second appeal, Case No. 20 MA 0066, arguing that the trial court erred in granting Appellees' motion to dismiss following our limited order of remand. *Id.* at ¶ 1, 8-9. On September 29, 2021, this court held:

Appellants correctly assert that the trial court failed to address the outstanding questions as to Appellants' conversion claim that were remanded and the trial court erred when it dismissed the matter without following the instructions on remand. For the following reasons, the June 5,

2020 judgment entry is vacated and the matter is once again remanded to the trial court for proceedings consistent with this holding and our Opinion in *Manshadi v. Bleggi,* 2019-Ohio-1228, 134 N.E.3d 695 ("*Manshadi I*").

*Manshadi II* at ¶ 1.

**{¶4}** On November 1, 2022, a jury trial commenced on Appellants' conversion claim against Appellees Bleggi and MID. Bleggi, Manshadi, and Scott Felton, a director analyst with Travelers Insurance, all testified. In this third appeal, Appellants specifically take issue with the truthfulness of Bleggi's testimony.

**{¶5}** Bleggi maintained that MID operated as its own functional entity independent of himself. Bleggi was asked if he personally took "one dime" of the insurance money. (11/1/2022 Jury Trial Tr., p. 181). Bleggi replied, "I took nothing. I took absolutely zero from that." (*Id.*) Bleggi further testified he was not paid a salary from MID for two years and that he drained his IRA to meet payroll. He also stated MID never recovered from the flooding incident and that MID's medical practice came to an end. Bleggi said, however, that MID was still an active LLC engaging in minimal business operations by reading x-rays.

**{¶6}** When asked what happened to the insurance money, Bleggi testified the proceeds were used to renovate the building which was damaged by the flood. The building was owned by AMB Realty, LLC, which was owned by Bleggi and/or his wife. Regarding the equipment, Bleggi said the MID insurance money was spent on acquiring used equipment to replace the damaged equipment. MID bought five pieces of equipment from five different companies. MID was eventually evicted from the Boardman location by the bank in which MID had conveyed a deed in lieu of foreclosure. Bleggi said he was not permitted to remove any of the equipment. MID officially dissolved following the trial.

**{¶7}** The jury responded "no" to the following interrogatory: "(F) Was Albert Bleggi's control over Medical Imaging Diagnostics, LLC so complete that Medical Imaging Diagnostics, LLC had no separate mind, will, or existence of its own?" The jury found that MID committed conversion and rendered a verdict in favor of Appellants for $175,000 but rejected piercing the corporate veil to attach liability to Bleggi personally.

**{¶8}** On November 4, 2022, the trial court entered judgment in favor of Appellants and against MID only for $175,000.

Case No. 24 MA 0025

**{¶9}** On November 3, 2023, Appellants filed a motion for relief from judgment pursuant to Civ.R. 60(B)(3) seeking an order setting aside the trial court's November 4, 2022 judgment. Appellants do not seek to disturb the $175,000 verdict against MID but rather seek to reopen the issue of Bleggi's personal liability. Appellants claim Bleggi committed fraud by lying on the witness stand about whether he personally took any of the insurance proceeds that was for Galexco's equipment. Appellants also claim they should be able to pierce the corporate veil because Bleggi had total control over MID. Appellants further reveal MID sold its assets for $75,000 to RPJ Liberty Enterprises, LLC and claim that most of the proceeds went directly to Bleggi. Attached to the motion were several exhibits, including MID payroll bank statements from 2014 and 2015.

**{¶10}** On December 18, 2023, Appellee Bleggi filed a brief in opposition. Bleggi stresses that all of the allegations contained in Appellants' Civ.R. 60(B) motion either occurred before the complaint was filed or brought up in trial. Bleggi maintains the jury already found to not pierce the corporate veil and, thus, any such claim at this point is res judicata. Bleggi also asserts Appellants' claim that he committed fraud is only supported by mere allegations and not facts. Attached to Bleggi's brief in opposition is his affidavit, which states:

> I, the undersigned, Albert Bleggi do hereby state and affirm as follows:
>
> 1. To repeat my testimony at the trial of Manshadi v. MID, et al. Case No. 16-CV-0320, I did not take one dime of insurance proceeds paid to MID by Travelers Insurance Company.
>
> 2. The vast majority of the monies referred to in the Plaintiff's Motion for Relief from Judgment went to the purchase of new and used equipment needed in the business because of the fact that the equipment there was a total loss.
>
> 3. Some of the money was in fact used to pay off debts incurred while the business was down.
>
> 4. All of the insurance money paid to MID went to MID's benefit.

Case No. 24 MA 0025

5. The biggest factor in the business dying was MID went from being the only facility in the area doing x-rays, MRIs, and cat scans to one of ten in the immediate vicinity.

6. This meant going from three million dollars a year [re]venue to three hundred thousand dollars.

7. MID was down so long because of the flood, they never recovered.

8. It is not difficult to believe that we lost numerous customers because we could not provide the service they needed.

9. MID money did not go to the building repairs, that was a separate policy as was revealed in the Court proceedings.

Affiant sayeth naught.

(12/15/2023 Affidavit of Albert Bleggi).

**{¶11}** On January 23, 2024, the trial court denied Appellants' Civ.R. 60(B) motion, stating: "Based upon the fact that this case was tried in front of a jury and the jury found that Dr. Bleggi did not totally control MID and the fact the Plaintiff failed to obtain the records for a period of six years supports a finding that this motion should fail. THEREFORE, the Motion is OVERRULED." (1/23/2024 Judgment Entry).

**{¶12}** Appellants filed the instant appeal, Case No. 24 MA 0025, and raise one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY DENYING APPELLANTS' CIV.R. 60(B) MOTION.**

**{¶13}** In their sole assignment of error, Appellants argue the trial court erred in denying their Civ.R. 60(B) motion. Appellants raise four issues: (1) "Materially false testimony designed to avoid personal liability qualifies as fraud inter partes to warrant relief under Civ.R. 60(B)(3)"; (2) "Materially false testimony designed to avoid personal liability qualifies as fraud upon the court to warrant relief under Civ.R. 60(B)(5)"; (3) "Civ.R.

Case No. 24 MA 0025

60(B)(3) or Civ.R. 60(B)(5), in proving fraud inter partes or fraud upon the court, respectively, do not require due diligence to discover the fraud"; and (4) "Appellants allege sufficient operative facts in their Civ.R. 60(B) motion to warrant an evidentiary hearing." (6/12/2024 Appellants' Brief, p. 1). Because Appellants' issues all center around their claim that Bleggi lied under oath, took MID insurance proceeds for himself individually, and perpetrated fraud upon the court, we will address them together for ease of discussion.

> In order to prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *Ohio Receivables, LLC v. Millikin*, 7th Dist. Columbiana No. 17 CO 0038, 2018-Ohio-3734, ¶ 19, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Courts are not required to hold a hearing on a Civ.R. 60(B) motion unless the motion and accompanying materials contain operative facts to support relief under Civ.R. 60(B). *Id.* at ¶ 19, citing *Summers v. Lancia Nursing Homes, Inc.*, 2016-Ohio-7935, 76 N.E.3d 653, ¶ 40 (7th Dist.).

> The standard of review used to evaluate the trial court's decision to grant or deny a Civ.R. 60(B) motion is abuse of discretion. *Ohio Dept. of Job & Family Servs. v. State Line Plumbing & Heating, Inc.*, 7th Dist. Mahoning No. 15 MA 0067, 2016-Ohio-3421, ¶ 12. An abuse of discretion connotes conduct which is unreasonable, arbitrary, or unconscionable. *State ex rel. Edwards v. Toledo City School Dist. Bd. Of Edn.*, 72 Ohio St.3d 106, 107, 647 N.E.2d 799 (1995).

*Paczewski v. Antero Resources Corp.*, 2019-Ohio-2641, ¶ 26-27 (7th Dist.).

Case No. 24 MA 0025

**{¶14}** In this case, Appellants' November 3, 2023 Civ.R. 60(B) motion was filed within one year of the trial court's November 4, 2022 judgment, thereby making it timely filed. (*GTE* third prong). The two main issues here are whether Appellants have demonstrated a meritorious defense or claim (*GTE* first prong) and whether they are entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5) (*GTE* second prong).

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

Civ.R. 60(B).

**{¶15}** Regarding the *GTE* first prong, Appellants assert they have demonstrated "a meritorious defense or claim" that would justify granting their Civ.R. 60(B) motion. "Meritorious" is defined as, "worthy of legal victory; having enough legal value to prevail in a dispute." *Black's Law Dictionary* (12th Ed. 2024). The arguments set forth in Appellants' brief, however, are merely allegations which are not supported by facts that MID money went to Bleggi personally or that he had total control over the business. Appellants instead rely upon "plausible scenario[s]" and "cloud[s] of suspicion" in their quest to pierce the corporate veil. (6/12/2024 Appellants' Brief, p. 13, 17).

> There are three mandatory elements to pierce the corporate veil: (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) the control by those to be held liable was exercised in such a manner as to

commit fraud, an illegal act, or a similarly unlawful act; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Dombroski* [*v. Wellpoint*]*,* 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538 at ¶ 18, 27, 29 (adding "similarly unlawful act" to the second prong), modifying *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.,* 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993).

*Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, ¶ 59 (7th Dist.).

{¶16} Appellants fail to establish that Bleggi individually took any of the MID money or committed any of the conversion. Appellants posit that the 2014 and 2015 transfers, ranging from $10,000 to over six figures and attached to its Civ.R. 60(B) motion, "place Bleggi personally in the center of the conversion which MID was found liable." (6/12/2024 Appellants' Brief, p. 12). Appellants also believe they "put serious doubt in Bleggi's testimony that MID had its own separate mind, will, and existence of its own." (*Id.*) Appellants claim that "[i]f Bleggi left behind equipment, including any replacement equipment, as he testified, then he significantly reduced MID's asset value and made it much less collectible while this case was pending." (*Id.*) Appellants opine that "[i]f replacement equipment was not obtained, the large monetary amounts diverted from the MID account must have gone toward Bleggi's personal benefit." (*Id.*) Appellants believe "Bleggi's misrepresentation that the insurance money was spent on the building provided cover and diverted attention away from what really happened to the money." (*Id.* at p. 14).

{¶17} This case was filed in 2016. There was extensive discovery including a lengthy deposition of Bleggi. All of the payments by MID's insurance company, as mentioned in Appellants' brief, were discussed and produced at deposition as well as produced for the jury to review during the trial in 2022. The jury found no conversion with respect to Bleggi. The jury also found that Bleggi was not individually liable.

{¶18} It was revealed that there were two separate insurance policies, one covering the damage to the building owned by AMB and one for MID. During trial, Bleggi maintained that MID operated as its own functional entity independent of himself. Bleggi testified that he did not personally take "one dime" of the MID insurance money. (11/1/2022 Jury Trial Tr., p. 181). This was uncontroverted at the time of trial. He said

the insurance money went towards repair and replacement of equipment. Nevertheless, the business went under because it was closed for such an extensive period of time and substantial business went elsewhere. The jury chose to believe Bleggi. *See Bigler v. Personal Serv. Ins. Co.*, 2014-Ohio-1467, ¶ 147 (7th Dist.) (the jury is the sole and exclusive judges of the facts, the weight of the evidence, and the believability of the witnesses). Also, attached to Bleggi's brief in opposition to Appellants' Civ.R. 60(B) motion is his affidavit, which details the difficulties MID had in replacing equipment and the loss in business due to its extensive closure.

**{¶19}** Appellants specifically take issue with a March 31, 2014 bank transfer. Bleggi went to Huntington Bank and transferred $249,600 from MID's payroll account to another Huntington account. Appellants believe "it is highly likely that the teller transfer went to a non-MID account" and that "such a transfer was for [Bleggi's] own personal benefit." (6/12/2024 Appellants' Brief, p. 5). Appellants offer only their conjecture and provide no evidence to support this speculation. It was revealed during oral arguments that this specific transfer was not discussed directly through testimony at the jury trial but that the transfer issues were disclosed. All of the allegations contained in Appellants' Civ.R. 60(B) motion either occurred before the complaint was filed in 2016 or brought up during the jury trial in 2022.

**{¶20}** Appellants' arguments are merely allegations, and not supported by fact, that the MID insurance money went to Bleggi himself or that he had total control over the business in order to pierce the corporate veil. *See Premier Therapy, LLC*, 2016-Ohio-7934, at ¶ 59 (7th Dist.). Based on the facts presented, Appellants have not demonstrated a meritorious defense or claim that would justify granting their motion. Appellants rest on arguments of entitlement for relief under Civ.R. 60(B)(3) and (5).

**{¶21}** Regarding the *GTE* second prong, Appellants argue they are entitled to relief under Civ.R. 60(B)(3) ("fraud," "misrepresentation," "or other misconduct") and (5) ("any other reason justifying relief").

**{¶22}** First, Appellants claim they are entitled to relief under Civ.R. 60(B)(3). Appellants' fraud allegation centers around their belief that Bleggi lied on the witness stand regarding whether he took any of the MID insurance proceeds for his own benefit. However, as addressed, there is no evidence to support Appellants' claim of "fraud,"

"misrepresentation," or "other misconduct." Upon a review of the record, the trial court did not abuse its discretion in concluding that Appellants were not entitled to relief under Civ.R. 60(B)(3) as their motion does not contain operative facts to support relief. *See Paczewski,* 2019-Ohio-2641, at ¶ 26 (7th Dist.).

**{¶23}** Second, although not raised before the trial court, Appellants allege here that they are entitled to relief under the "any other reason justifying relief" provision in Civ.R. 60(B)(5). This "catch-all" provision, however, only applies when a more specific provision does not. *Tabor v. Tabor*, 2003-Ohio-1432, ¶ 30 (7th Dist.). The grounds for invoking Civ.R. 60(B)(5) should be substantial. *Id.* For the same reasons above, involving the specific provision in Civ.R. 60(B)(3), Appellants are not entitled to relief under Civ.R. 60(B)(5). *See Paczewski* at ¶ 26.

**{¶24}** Appellants' assertions that Bleggi lied under oath at the jury trial, took MID insurance proceeds for himself individually, and perpetrated fraud upon the court, are without merit. Appellants did not allege operative facts in their Civ.R. 60(B) motion to warrant an evidentiary hearing. Appellants' reliance upon "plausible scenarios" and "clouds of suspicion" do not justify piercing the corporate veil based on the facts presented in this case.

## CONCLUSION

**{¶25}** For the foregoing reasons, Appellants' sole assignment of error is not well-taken. The judgment of the Mahoning County Court of Common Pleas denying Appellants' Civ.R. 60(B) motion for relief from judgment is affirmed.

Waite, J., concurs.

Hanni, J., dissents with dissenting opinion.

Case No. 24 MA 0025

Hanni, J., dissenting.

**{¶26}** With regard and respect to my colleagues, I must dissent from the majority opinion. Because I would find that the trial court should have held a hearing on Appellants' Civ.R. 60(B) motion before ruling on it, I would reverse the matter and remand it with instructions for the trial court to hold an evidentiary hearing.

**{¶27}** Regarding a hearing on a Civ.R. 60(B) motion and quoting the Eighth District, the Ohio Supreme Court has stated: "If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion." *Coulson v. Coulson*, 5 Ohio St.3d 12, 16 (1983), quoting *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist. 1974).

**{¶28}** As further explained by the Tenth District:

> The trial court has discretion whether to hold a hearing before ruling on the motion. Where grounds for relief from judgment appear on the face of the record, a court may grant the motion without a hearing. *Matson v. Marks* (1972), 32 Ohio App.2d 319, 291 N.E.2d 491 [61 O.O.2d 476], paragraph five of the syllabus; *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 371 N.E.2d 214 [7 O.O.3d 5], syllabus. However, where grounds for relief from judgment appear on the face of the record, a court abuses its discretion and may not overrule the motion unless it first makes a factual determination of the alleged grounds for relief adverse to the movant. *Matson v. Marks*, *supra*, paragraph six of the syllabus. In other words, if movant's Civ.R. 60(B) motion contains allegations of operative facts warranting relief, the trial court should grant a hearing to take evidence and either discredit or verify these facts before ruling. *Coulson v. Coulson* (1983), 5 Ohio St.3d 12, 16, 448 N.E.2d 809; *Twinsburg Banking Co. v. RHEA Constr. Co.* (1983), 9 Ohio App.3d 39, 458 N.E.2d 440 syllabus; *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 316 N.E.2d 469 [68 O.O.2d 251], paragraph four of the syllabus; see, also, *Advance Mortgage*

*Corp. v. Novak* (1977), 53 Ohio App.2d 289, 373 N.E.2d 400 [7 O.O.3d 338], paragraph two of the syllabus.

*U.A.P. Columbus JV326132 v. Plum*, 27 Ohio App.3d 293, 294-295 (10th Dist.1986).

**{¶29}** In this case, Appellants attached copies of Medical Imaging Diagnostics' (MID's) bank records during the relevant time. These records show a deposit of $333,053.99 into MID's account on March 27, 2014. The records then show a teller transfer four days later in the amount of $249,600 into an unknown checking account. (Motion for Relief from Judgment, Exs. A-4 through A-8). I would find this evidence was sufficient to warrant a hearing for the trial court to take evidence to either discredit or verify whether this transfer was for Bleggi's personal use.

**{¶30}** Because Appellants' motion for relief from judgment contains allegations of operative facts and potentially supporting documentary evidence warranting relief, I would find that the trial court should have held an evidentiary hearing before ruling on the motion.

[Cite as *Manshadi v. Bleggi*, 2024-Ohio-5191.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**